IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HEALTH REPUBLIC INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 16-259 |
| v. | ) ) | Filed: January 30, 2024 |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |
| COMMON GROUND HEALTHCARE COOPERATIVE, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 17-877 |
| v. | ) ) | Filed: January 30, 2024 |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

This matter is on remand from the United States Court of Appeals for the Federal Circuit for further proceedings related to Class Counsel Quinn Emanuel Urquhart & Sullivan, LLP's ("Quinn Emanuel") Motions for Approval of Attorney's Fee Request. Before the Court are substantively identical Motions for an Order Directing an Accounting and Safekeeping of the Disputed Funds and Limited Discovery filed by the objecting members of the Non-Dispute Subclasses ("Objectors"). *See Health Republic* ECF No. 194.[1] Objectors claim that under Rule

---

[1] Because the briefing in both cases is substantively the same, for ease of reference, this Order will cite only to the briefing in *Health Republic*, except when necessary to cite to filings differentiating the fee award totals in each case.

1.15 of the rules of professional conduct (as promulgated by the American Bar Association, District of Columbia, California, and Illinois), Quinn Emanuel is obligated to provide the Objectors with an accounting of the awarded funds and to place the funds into an interest-bearing client trust account due to the ongoing "dispute" over the fee award. *See id.* at 6. In addition, Objectors argue that under Rule 54(d)(2)(B)(iv) of the Rules of the United States Court of Federal Claims ("RCFC") and Rule 23(h) of the Federal Rules of Civil Procedure, the Court should order discovery regarding the existence and terms of a judgment preservation insurance ("JPI") policy that Quinn Emanuel allegedly purchased before distributing the fee award funds to its partnership. *See id.* at 8–9. As outlined below, the Court **DENIES** Objectors' request for an accounting and safekeeping and **GRANTS** Objectors' request for discovery limited to the JPI policy document(s) alone.

## I. BACKGROUND

Over Objectors' opposition, on September 16, 2021, the Court awarded Quinn Emanuel its requested attorney's fee of 5 percent of the common fund recovered by the Non-Dispute Subclasses in the successful litigation of these class action suits. *See* Op. & Order at 27–28, *Health Republic* ECF No. 138. Between the two cases, Quinn Emanuel's fee award totaled approximately $185 million. *See* Rule 54(b) J., *Health Republic* ECF No. 143; Rule 54(b) J., *Common Ground* ECF No. 155. Pursuant to RCFC 62(a), execution of the Court's judgments was stayed for 30 days.

On October 1, 2021, two weeks after the Court entered judgment, Objectors filed a Notice of Appeal as to the attorney's fee award. *See Health Republic* ECF No. 144. Ultimately, the Federal Circuit found that the Court did not properly perform a lodestar cross-check against the fee requests, as specified in the class notices. *Health Republic Ins. Co. v. United States*, 58 F.4th

1365, 1373, 1377 (Fed. Cir. 2023). As such, the Federal Circuit vacated the award and remanded to the Court to conduct "a lodestar cross-check in accordance with [its] opinion, including an assessment of whether there is sufficient justification for an award with an implicit multiplier outside the mainstream of relevant multipliers." *Id.* at 1378 (holding that the Court should also reconsider any parts of its analysis beyond the lodestar cross-check affected by the Federal Circuit's conclusions). The Mandate issued on March 9, 2023. *See Health Republic* ECF No. 183.

In the meanwhile, Quinn Emanuel accepted a distribution of funds from the claims administrator for the full amount of fees originally awarded by the Court. Decl. of Adam B. Wolfson ¶ 4, *Health Republic* ECF No. 202-1. The record does not indicate the precise timing of the distribution, but presumably it followed the expiration of the automatic stay. The record is also unclear as to whether or when Quinn Emanuel subsequently distributed the funds to its partnership. Objectors' Mot., App. at 6 (Decl. of Moe Keshavarzi ¶ 2), *Health Republic* ECF No. 194-1. Quinn Emanuel, however, has not denied that the funds were so distributed, nor has it denied that it purchased a JPI policy covering the original $185 million award. Accordingly, for purposes of resolving the pending motions, the Court deems these facts as impliedly conceded.

Following a status conference on March 21, 2023, the Court entered a scheduling order governing the remand proceedings. Pursuant to that order, on May 2, 2023, Quinn Emanuel filed its renewed Motions for Approval of Attorney's Fee Request. *See Health Republic* ECF No. 192. Objectors contemporaneously filed the present motions requesting the Court order an accounting and safekeeping of the fee award distributed to Quinn Emanuel, as well as discovery into Quinn Emanuel's purported purchase of a JPI policy. *Health Republic* ECF No. 194 at 1. Objectors' motions are now fully briefed. *See* Opp'n to Objectors' Mot., *Health Republic* ECF No. 202; Objectors' Reply, *Health Republic* ECF No. 204.

## II. DISCUSSION

Considering the relevant ethics guidance in the context of the present dispute, and the Court's rules of procedure governing final judgments, the Court finds that Objectors have failed to substantiate their requests for an accounting and safekeeping. Quinn Emanuel's purported distribution of award funds to its partners was not improper because it executed on the final, unstayed judgments of the Court. As to Objectors' request for discovery, the Court will order disclosure of the JPI policy document(s) in the interest of transparency and consistent with the Court's fiduciary duty in assessing reasonable attorney's fees in class actions.

### A.  Objectors' Accounting and Safekeeping Requests are Unwarranted.

The parties' arguments for and against an accounting and safekeeping of the fee award funds center upon the interplay of the professional conduct rules for lawyers and the Court's rules of procedure. Having considered the parties' competing interpretations, the Court agrees that Objectors' requests for relief are not justified.

Objectors argue that Quinn Emanuel became aware that the fee award was in dispute (or continued to be in dispute) upon the filing of their Notices of Appeal, thus triggering Quinn Emanuel's ethical duties to sequester the disputed funds and to provide Objectors an accounting upon their request under Rule 1.15 of the American Bar Association's Model Rules of Professional Conduct ("Model Rules"), as well as substantially similar provisions adopted by jurisdictions relevant to Class Counsel's representation in these suits. *Health Republic* ECF No. 194 at 21–22, 23. Objectors do not contend that the transfer of the fee award funds from the claims administrator to Quinn Emanuel was improper; rather, "the problem was what [Quinn Emanuel] did next." *Health Republic* ECF No. 204 at 5. Specifically, Objectors claim that Quinn Emanuel distributed the award funds to its partners, "rather than treating them as 'frozen,'" in violation of the

professional conduct rules. *Id.* ("The moment a client disputes your fees, the disputed amount is frozen in your client trust bank account until the dispute is settled." (quoting 2023 Cal. State Bar Handbook on Client Tr. Acct., 24)).

Objectors argue that an accounting is necessary to (1) ensure Quinn Emanuel "can and will" return any portion of the fee award to the Class, if so ordered; (2) "establish what interest would have accrued" on such funds; and (3) determine if Quinn Emanuel violated Model Rule 1.15(d) by "commingl[ing] the [fee award] funds in its general operation account." *Health Republic* ECF No. 194 at 21–22. They further argue that sequestering the fee award is required to ensure the Class is "promptly and fully" paid any refunded fees plus interest. *Id.* at 24; *see id.* at 25. Objectors ground their requests for relief in the Court's fiduciary duty to the Class, the Court's inherent equitable authority, and its "'power and duty' to enforce attorneys' moral and ethical responsibilities." *Id.* at 18; *see id.* at 17.

Quinn Emanuel argues that Objectors did not pursue a stay of the Court's September 2021 judgments pending appeal pursuant to RCFC 62; therefore, Quinn Emanuel was free to execute upon the Court's final judgments, just like any other final judgment. *Health Republic* ECF No. 202 at 13. According to Quinn Emanuel, the commingling allegations under Model Rule 1.15(d) "only apply if counsel did not have a final judgment-based (or similarly final) right to the funds in question." *Id.* at 23. In its view, ordering safekeeping of the fee award would "act as a bond requirement . . . that Objectors did not seek at the proper time" by posting a bond or moving for a stay pursuant to RCFC 62. *Id.* at 24. Quinn Emanuel also takes issue with the notion that an accounting and safekeeping are necessary to protect the Class. It represents that Class Counsel "unequivocally commits to repay any difference" if ordered to do so by the Court, and any interest owed on the difference is a "simple" calculation. *Id.* at 23; *see id.* at 24 (asserting that

"sequestering the full $185 million [fee award] is unnecessary to prove one's ability to pay a 'portion' of that sum").

As Objectors correctly note, the Court of Federal Claims uses the Model Rules "'to provide guidance regarding counsel's ethical obligations to the [C]ourt.'" *FMS Inv. Corp. v. United States*, 137 Fed. Cl. 99, 102 (2018) (quoting *Edmonds ex rel. Edmonds v. Sec'y of Dep't of Health & Hum. Servs.*, No. 04-87V, 2012 WL 1229149, at *12 n.32 (Fed. Cl. Mar. 22, 2012)). These rules (and similar state bar ethics rules) set forth the duties and obligations of lawyers for the safekeeping of property in the lawyer's possession. Under Model Rule 1.15(d), a lawyer has a duty, if requested, to provide "a full accounting" regarding property or funds received by the lawyer "in which a client or third person has an interest." Model Rules of Pro. Conduct r. 1.15(d) (Am. Bar Ass'n 2023). In addition, if a lawyer "is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests," the lawyer has an ethical duty to segregate such property or funds "until the dispute is resolved." *See id.* r. 1.15(e).

The comments to the rules, as well as various state bar ethics opinions, provide guidance on lawyers' compliance with the accounting and safekeeping duties. These authorities confirm that where a lawyer receives funds from which the lawyers' fees will be paid "[t]he disputed portion of the funds must be kept in a trust account and the lawyer should suggest means for prompt resolution of the dispute, such as arbitration. [But] [t]he undisputed portion of the funds shall be promptly distributed." *Id.* r. 1.15, cmt. 3; *see* D.C. Bar, Ethics Op. 293, at 2 (2000) ("Because of the lawyer's duty of loyalty to the client, the client's mere assertion of a claim is enough to prevent the lawyer from withdrawing any disputed property."). Additionally, the Court also looks to the scope of the professional conduct rules as relevant to the present dispute. This is because "[t]he Rules presuppose a larger legal context shaping the lawyer's role. That context includes court

6

rules and statutes relating to matters of . . . substantive and procedural law in general." Model Rules of Pro. Conduct, Scope ¶ 15.

In the instant cases, the broader context includes the Court's procedural rules governing final judgments. Under RCFC 62(a), execution of a final judgment issued by this Court is subject to an automatic 30-day stay. Otherwise, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security." RCFC 62(b). If an appealing party does not request a stay, "a trial court's judgment . . . normally takes effect despite a pending appeal." *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015); *see* 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3954 (5th ed.) (discussing the relation of Rule 8 of the Federal Rules of Appellate Procedure to Rule 62 of the Federal Rules of Civil Procedure and explaining that "[t]he taking of an appeal does not by itself suspend the operation or execution of a district-court judgment or order during the pendency of the appeal").[2]

Although they raise various arguments, the central point of disagreement between the parties as to the applicability of Model Rule 1.15 is whether Quinn Emanuel's interest in the funds was "fixed" at the time of the purported distribution to its partners.[3] Objectors' interpretation of a "fixed" interest in a fee award requires that any disputes between the lawyer and a client as to the fee be finally resolved and, in this case, unappealable. *Health Republic* ECF No. 194 at 23; *see Health Republic* ECF No. 194-1 at 13 (Decl. of Andrew I. Dilworth ¶ 13) ("[O]nce Quinn Emanuel

---

[2] The Federal Rules of Civil Procedure have been incorporated into this Court's rules as appropriate. *See* RCFC, as amended through July 31, 2023, at i; *Schmidt v. United States*, 89 Fed. Cl. 111, 125 (2009) (recognizing that the Court of Federal Claims may cite district court decisions as "persuasive" authority when applying similar procedural rules).

[3] Each party's position derives from different portions of the same California State Bar ethics opinion. *See* Cal. Standing Comm. on Pro. Resp. and Conduct ("COPRAC"), Formal Op. No. 2006-171 (2006).

7

had notice of the 'dispute' created at least by the filing of the Notices of Appeal, its interest in any subsequent monies received from the Claims Administrator for attorney's fees was not 'fixed.'"). Because they were challenging the fee award on appeal, Objectors argue that Quinn Emmanuel's interest was not "fixed." *Health Republic* ECF No. 194-1 at 27–28 (Dilworth Decl. ¶ 61); *see* COPRAC, Formal Op. No. 2006-171, at 3 (2006) ("[F]unds misappropriated from a CTA, or withdrawn before an attorney's fee becomes 'fixed'[,] . . . are funds in which the client has a whole or part ownership interest.").

Quinn Emanuel does not use the term "fixed" in its Opposition, but it asserts that the final, unstayed judgment of the Court is the "final and binding determination," *Health Republic* ECF No. 194-1 at 31 (Dilworth Decl. ¶ 71), that Objectors argue is necessary to create a fixed interest. *See Health Republic* ECF No. 202 at 9. According to Quinn Emanuel, under RCFC 62, the judgment "constitutes a resolution of the fee award," *id.* at 19, regardless of a notice of appeal, and as such the funds were "'properly withdrawn from a client trust account'" in accordance with the ethical rules, *id.* at 20 (quoting COPRAC, Formal Op. No. 2006-171, at 4).

As an initial matter, neither Model Rule 1.15 nor its commentary plainly address the application of the rule to the scenario at bar. The Model Rules do not define the term "dispute" or, more importantly, indicate when such a dispute should be considered "resolved." Model Rules of Pro. Conduct r. 1.15(e). The same goes for the state bar ethics rules cited by Objectors, including California's Rule 4-100, which likewise does not define the terms "fixed" or "finally resolved." Cal. Rules of Pro. Conduct r. 4-100(A)(2) (2012); *see* COPRAC, Formal Op. No. 2006-171, at 2 (discussing rule). The Model Rules recommend "prompt resolution" of disputes, such as through arbitration. Model Rules of Pro. Conduct r. 1.15, cmt. 3. So too does the District of Columbia's rule, but it also acknowledges "judicial resolution of the client's claim." D.C. Bar,

Ethics Op. 293, at 2.  Even still, none of the cited rules, commentary, or ethics opinions discuss whether a final, unstayed judgment of a trial court awarding attorney's fees is sufficient to "resolve" a dispute about those fees within the meaning of the ethics rules.

Objectors also cite no cases or other authorities that have applied Model Rule 1.15 (or similar state bar ethics rules) in circumstances like the instant cases.  In support of their arguments, Objectors submitted expert reports by Andrew I. Dilworth and George R. Clark, both of whom are legal practitioners who specialize in professional responsibility issues.  Although Mr. Dilworth and Mr. Clark are certainly well qualified, their declarations offer opinions of law, which courts are "consistently reluctant" to consider.  *Murfam Farms, LLC ex rel. Murphy v. United States*, No. 06-245T, 2008 WL 4725468, at *2 (Fed. Cl. Sept. 19, 2008) (collecting cases).  Their opinions rely on the same sources of authority discussed above and cite two cases as relevant to the question of whether Quinn Emanuel's interest in the fee award funds was "fixed" at the time of distribution. *See Health Republic* ECF No. 194-1 at 32 (Dilworth Decl. ¶ 75) (citing *Miller v. Rau*, 216 Cal. App. 2d 68 (1963)); *id.* at 57 (Decl. of George R. Clark ¶ 33) (citing *In re Haar*, 667 A.2d 1350, 1353 (D.C. 1995)).  Neither of these additional authorities involve the procedural posture presented by the facts here.  *See Miller*, 216 Cal. App. at 75–76 (action for conversion against attorney who distributed to his clients proceeds from the sale of an aircraft where attorney had notice that a third-party claimed an interest in the funds and the subject action was then-pending in state trial court to determine the third-party's claim); *Haar*, 667 A.2d at 1353 (disciplinary proceeding against attorney who withdrew $4,000 from client settlement proceeds as "undisputed" portion of fee based only on the client's offer to settle fee dispute for $4,000 and before the attorney obtained a default judgment in an action against the client for the full amount owed).

Rather, as Quinn Emanuel highlights, federal courts in numerous class action cases have approved "quick-pay" provisions in class settlements. *See Health Republic* ECF No. 202 at 16 (collecting cases). Under such a provision, an attorney's fee award is distributed to class counsel upon entry of the award order, subject to the return of any amount due because of a modification or reversal of the fee award on appeal. *See Turabado Med. Ctr. v. Beach*, No. 96-2250, 1997 WL 33810581, at *5 (D.P.R. Aug. 13, 1997). Objectors are correct that no such quick-pay provision is applicable here, as these class actions concluded in judgments for the Class, not settlements. However, the fact that numerous federal courts from various jurisdictions have approved such provisions *over objections* undermines the contention that distribution of a fee award before objecting class members have exhausted their appeal rights raises ethical concerns. *See, e.g.*, *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020) (observing that "quick-pay provisions have generally been approved by other federal courts" and rejecting objectors' challenge as "border[ing] on frivolous"); *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-md-2143, 2016 WL 7364803, at *13 (N.D. Cal. Dec. 19, 2016) (finding that quick-pay provisions "are common practice in the Ninth Circuit" and "do not violate the Rules of Professional Responsibility"); *In re LivingSocial Mktg. & Sales Prac. Litig.*, 298 F.R.D. 1, 22 n.25 (D.D.C. 2013) (overruling objection based on "ample authority for the 'quick pay' provision"). To hold otherwise would mean that each of these court's settlement approval orders sanctioned the potential violation of ethical rules. The Court declines to reach such conclusion.

Quinn Emanuel also cites two cases in which courts have found that class counsel did not have an ethical obligation to return all or part of an attorney's fee award when, as here, the award was vacated—not modified or reversed—on appeal. *See In re Optical Disk Drive Prods. Antitrust*

*Litig.*, No. 21-16291, 2022 WL 1955672, at *2 (9th Cir. 2022) (rejecting objectors' argument that the quick-pay provision of the class settlement agreement and California's ethical rules required immediate return of fee award funds pending remand to district court); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 1:15-md-2624, 2020 WL 5757504, at *12 n.11, 13 & n.14 (E.D. Va. Sept. 4, 2020) (construing ambiguous quick-pay provision as requiring return of interest that would have accrued on fee award, but rejecting argument that class counsel breached a fiduciary duty by improperly retaining the property of the class when it failed to return funds to escrow after award was vacated on appeal).

The "ordinary rules of civil procedure" also support the conclusion that Quinn Emanuel's interest in the fee award was sufficiently fixed, even after Objectors filed their Notices of Appeal. *Coleman*, 575 U.S. at 539. As discussed above, the Court's fee awards were final judgments resolving the parties' dispute over the fee amount. The subsequent appeal did not divest those judgments of their finality or effect where no stay was sought or granted. *See, e.g., Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124, 1128–29 (D.C. Cir. 1978) ("[I]t is equally clear that the vitality of [the District Court's] judgment is undiminished by pendency of the appeal. Unless a stay is granted either by the court rendering the judgment or by the court to which the appeal is taken, the judgment remains operative."); *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) ("[T]he mere pendency of an appeal does not, in itself, disturb the finality of a judgment[.]"); 9 Moore's Federal Practice ¶ 208.03 (2d ed. 1990) ("The only consequence of failing to obtain a stay is that the prevailing party may treat the judgment of the district court as final, notwithstanding that an appeal is pending."). Putting aside the ethical questions raised here, there is no reasonable dispute that fee award judgments are equally subject to RCFC 62. *See, e.g., Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-cv-02824, 2020 WL 8877819, at *3 (N.D.

11

Cal. Oct. 30, 2020) (denying stay under Rule 62(d) in fee-shifting case); *Singer v. Shannon & Luchs Co.*, 670 F. Supp. 1024, 1026 (D.D.C. 1987) (granting stay in fee-shifting case). Objectors have not cited any cases or other sources of authority that exempt fee award judgments from RCFC 62 (or its counterpart in the Federal Rules of Civil Procedure) in disputes between class counsel and objecting class members or between an attorney and his or her individual client.

Objectors argue that Quinn Emanuel cannot use procedural rules to avoid its ethical duties, *Health Republic* ECF No. 204 at 12 n.25, positing instead that the legal "default" is "the *inability* to distribute a fee award pending appeal" rather than the requirement to stay a final judgment under the rules of procedure, *id.* at 14 (emphasis in original). But that argument is premised on the contention that Model Rule 1.15 applies in a context where a dispute has been judicially resolved through a trial court's final judgment, which, as explained above, Objectors have not supported. The Court appreciates Quinn Emanuel's concern that accepting Objectors' argument would create a looming claw back mechanism, "regardless of the merits," such that attorneys (whether in a class action or otherwise) may never execute on a final judgment prior to the lapse of the appeal period or exhaustion of all appeals. *Health Republic* ECF No. 202 at 19; *see Health Republic* ECF No. 194-1 at 31 (Dilworth Decl. ¶ 71) (opining that Quinn Emanuel knew the fee award was disputed, "and it knew that Objectors *could maintain that dispute* by timely filing a notice of appeal" (emphasis added)), 32 (Dilworth Decl. ¶ 73) (opining that Quinn Emanuel's interest "is not fixed and is subject to the further determination of [this Court] and *any other appellate proceedings that may occur*" (emphasis added)). By this interpretation, Objectors risk utilizing the ethics rules as "procedural weapons," which the Model Rules caution against. *See* Model Rules of Pro. Conduct, Scope ¶ 20 ("[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.").

At the same time, the Court takes seriously Objectors' concerns about whether and how they will receive any amounts due if the Court reduces the fee award on remand. At this point, however, the parties can only speculate as to the result of the remand and Quinn Emanuel's ability to repay any amounts owed. As Quinn Emanuel correctly argues, to the extent the fee award is modified, Objectors will have a right to restitution from Quinn Emanuel. *See Health Republic* ECF No. 202 at 14 (citing Restatement (First) of Restitution § 74 (1937); Restatement (Third) of Restitution and Unjust Enrichment § 18 & cmt. e (2011)). And Quinn Emanuel "unequivocally commits to repay [the] difference (if any) between the two awards." *Id.* at 23; *see id.* at 7. Objectors have not identified any specific facts giving reason to question Quinn Emanuel's representation or to otherwise order sequestration. *Cf. Lumber Liquidators*, 952 F.3d at 487 (rejecting objectors' speculation about a quick-pay provision's effect on ability to recover their judgment and relying on class counsel's representation that it would refund (with interest) any amounts owed to the class if fee award was vacated on appeal). Nor is the Court convinced that an accounting is necessary at this time to determine the question of interest when the Court has not yet considered the merits of the renewed fee request.[4]

Accordingly, the Court denies Objectors' requests for an accounting and safekeeping.

**B.    Limited Discovery into the Existence and Terms of Any JPI Policy is Permitted.**

Objectors' second request stands on more solid ground. Objectors seek discovery into the "terms and circumstances" of JPI, if any, held by Quinn Emanuel, arguing "the terms of each layer of the JPI are relevant and discoverable." *Health Republic* ECF No. 194 at 26; *see id.* at 8. They base their request on RCFC 54(d), which provides that the Court may "order disclosure of 'the

---

[4] This ruling does not foreclose Objectors' ability to reassert its request for an accounting to the extent it is necessary or appropriate to determine any interest owed if the Court ultimately reduces the fee award.

13

terms of any agreement about fees for the services for which the claim [for attorney's fees] is made.'" *Id.* at 8 (quoting RCFC 54(d)(2)(B)(iv)). Objectors assert that JPI is an "agreement about fees" because insurance may be used to pay back a portion of the fees awarded to Quinn Emanuel, if required by the Court. *Id.* at 26.

Objectors also rely on the advisory committee notes to Rule 23(h) of the Federal Rules of Civil Procedure. *See id.* at 29–30; *Health Republic* ECF No. 204 at 22–23. Those notes observe that, in assessing reasonable attorney's fees in class actions, "[c]ourts have given weight . . . to agreements between class counsel and others about the fees claimed by the motion," in part because "'[s]ide agreements' . . . provide at least perspective pertinent to an appropriate fee award." Fed. R. Civ. P. 23(h), advisory comm. notes, 2003 amend., subdiv. (h) ("FRCP 23(h) note"). Objectors contend that a JPI policy between Class Counsel and a third party is a "side agreement" that could provide some "perspective pertinent" to the parties' fee dispute, especially if it requires Quinn Emanuel to again seek the full 5-percent fee "regardless of any new law of the case." *Health Republic* ECF No. 194 at 27; *see Health Republic* ECF No. 204 at 8 (highlighting that the Federal Circuit found Quinn Emanuel did not provide "enough to justify" the prior fee award (citing *Health Republic*, 58 F.4th at 1378)). Objectors additionally assert that if the JPI will be used to pay any amounts owed to the class then it "becomes a 'mode of payment' of attorney fees that [the] court 'must ensure . . . [is] fair and proper.'" *Health Republic* ECF No. 194 at 27 (quoting FRCP 23(h) note).

Quinn Emanuel objects to the discovery request as an "improper attempt to turn the fee dispute into a second litigation." *Health Republic* ECF No. 202 at 24 (citing *Andrade v. Jamestown Hous. Auth.*, 82 F.3d 1179, 1194 (1st Cir. 1996)); *see Hensley v. Eckerhart*, 461 U.S. 424, 467 (1933) ("A request for attorney's fees should not result in a second major litigation."). It argues

14

that there is a "basic presumption against discovery at this stage" of litigation, and thus "discovery in connection with fee motions is rarely permitted." *Health Republic* ECF No. 202 at 24–25 (citing, *e.g.*, *In re Genetically Modified Rice Litig.*, 764 F. 3d 864, 872 (8th Cir. 2014)); *see* Fed. R. Civ. P. 54, advisory comm. notes, 1993 amend., subdiv. (d), para. (2). According to Quinn Emanuel, the existence or terms of JPI "has no legal or logical bearing" on the review of the fee award on remand, *Health Republic* ECF No. 202 at 26, and Objectors' discovery request is simply "a fishing expedition without any logical justification," *id.* at 28.

Notwithstanding the Supreme Court's admonition in *Hensley*, the applicable rules do provide for the availability of some discovery related to a motion for attorney's fees, including agreements about the fees claimed or other discovery relevant to the objections. *See* RCFC 54(d)(2)(B)(iv); FRCP 23(h) note ("The court may allow an objector discovery relevant to the objections."). The advisory committee likely did not have JPI in mind when it amended the Federal Rules of Civil Procedure in 1993 to account for court-ordered disclosure of agreements about fees, since JPI appears to be a relatively new trend. At least one secondary source has attempted to identify the types of agreements falling under Federal Rule of Civil Procedure 54(d)(2)(B)(iv), which include retainer agreements, fee allocation agreements, and agreements not to contest a fee request. *See* 5 Newberg and Rubenstein on Class Actions § 15:12 (6th ed.). JPI is not exactly an equivalent, since it would have been procured only after Quinn Emanuel obtained the fee award orders and pertains to those judgments rather than the fees claimed in the original and renewed motions.

This matter is in a unique posture, however, because the Federal Circuit vacated the Court's prior fee award, presumably after Quinn Emanuel obtained JPI. The attorney's fee request is now back before the Court, and, consistent with the Federal Circuit's mandate, the Court must reassess

15

Quinn Emanuel's request and perform a lodestar cross-check. *Health Republic*, 58 F.4th at 1377–78. The JPI's terms may be relevant to the Court's task on remand if the policy provisions are inconsistent with the Court's objective "to ensure an overall fee that is fair for counsel and equitable within the class." FRCP 23(h) note (explaining that such inconsistencies might necessitate "adjustments in the class fee award"). And given the Court's "'fiduciary duty' to protect the interests of the class" in assessing a reasonable fee, *Health Republic*, 58 F.4th at 1377, "there is a strong argument that requiring transparency as to the fees is in the [C]lass's interest," 5 Newberg and Rubenstein on Class Actions § 15:12. The Court chooses, therefore, to err on the side of disclosure.

However, mindful of the Supreme Court's holding in *Hensley* and the judicial policy disfavoring extraneous litigation at the fee-award stage, the Court limits disclosure to the JPI policy document(s). Objectors' other requests for production, such as Quinn Emanuel's "communications with the insurers" or information regarding the insurer's financial stability, *Health Republic* ECF No. 194 at 28, are highly speculative. Objectors present no facts or other basis supporting the allegations that Quinn Emanuel may have concealed or misrepresented material facts, or disclosed confidential client communications, in the process of obtaining JPI, nor that Quinn Emanuel or its insurer may be unable to refund any amounts if the Court reduces the fee award.

Accordingly, Objectors' request for discovery into JPI will be granted in part. Discovery is limited to the disclosure of the JPI policy document(s) alone.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES IN PART** Objectors' Motion as to its request for an accounting and safekeeping, and **GRANTS IN PART** Objectors' Motion as to its request

for discovery, limited to production of the JPI policy document(s).  By no later than **February 13, 2024**, Quinn Emanuel shall disclose to Objectors the JPI policy document(s).  Objectors shall file their response to Quinn Emanuel's renewed motions for approval of attorney's fees request by no later than **March 5, 2024**.  Quinn Emanuel's reply is due **March 19, 2024**.

      **SO ORDERED**.


Dated: January 30, 2024                          */s/ Kathryn C. Davis*
                                                                KATHRYN C. DAVIS
                                                                Judge