**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

|  |  |  |
|---|---|---|
| COMMON GROUND HEALTHCARE COOPERATIVE, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 17-877 |
| v. | ) ) | Filed: May 19, 2026 |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

**OPINION AND ORDER**

Before the Court is Class Counsel's Motion for Approval of Attorney's Fees for the Cost-Sharing Reduction ("CSR") Claims Settlement.  Class Counsel requests that the Court approve an attorney's fee award of five percent of the net recovery under the approved settlement.  Only one class member, Quartz Benefits ("Quartz"), objects to this request.  For the reasons that follow, the Court **GRANTS** Class Counsel's request for a five-percent attorney's fee award.

## I.    BACKGROUND

On June 27, 2017, Class Counsel filed a Class Action Complaint on behalf of Common Ground Healthcare Cooperative ("Common Ground") and others similarly situated, challenging the Government's failure to make risk corridors payments to Qualified Health Plan ("QHP") issuers pursuant to Section 1342 of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), and the Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010) (collectively, the "ACA").  *See* Pl.'s Class Action Compl., ECF No. 1.  On November 22, 2017, Class Counsel filed a First Amended Class Action Complaint that added a claim under Section 1402 of the ACA for unpaid CSR payments for the 2017 and 2018 benefit years.  *See* Pl.'s First Am. Class Action Compl. ¶¶ 103–07, ECF No. 10.

This fee request pertains to the claim for CSR payments.  Congress created the CSR program to lower the expenses associated with health insurance coverage offered to eligible customers by requiring insurers to provide reductions in cost-sharing expenses such as co-payments and deductibles.  42 U.S.C. § 18071.  The Secretaries of the Department of Health and Human Services and the Department of the Treasury are required to reimburse the insurers for the reductions they make.  *Id.* §§ 18071(c)(3), 18082(c)(3).  The Government stopped making CSR reimbursement payments to issuers in October 2017 after the Attorney General of the United States concluded that such payments were not within any congressional appropriation.

On April 17, 2018, the Court certified the 2017-2018 CSR Class, appointed Common Ground as the class representative, and appointed Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel") as lead counsel for the Class.  *See* Op. & Order, ECF No. 30.  On July 23, 2018, Common Ground filed a Motion for Summary Judgment on behalf of the 2017-2018 CSR Class on its claims for unreimbursed CSR payments for the 2017 benefit year and the first two financial quarters of the 2018 benefit year.  *See* Pl.'s Mot. for Summ. J., ECF No. 36.  Defendant filed a Cross-Motion to Dismiss & Opposition to Plaintiff's Motion for Summary Judgment.  *See* Def.'s Cross-Mot. to Dismiss & Opp'n to Pl.'s Mot. for Summ. J., ECF No. 39.  The Court granted Plaintiff's Motion for Summary Judgment and denied the Government's Motion to Dismiss on February 15, 2019.  *See* Op. & Order, ECF No. 48.  Judgment was entered for the 2017-2018 CSR Class in the amount of $1,587,108,397.81 on October 22, 2019.  *See* Rule 54(b) J., ECF No. 72.

Common Ground subsequently filed a Second Amended Class Action Complaint on behalf of the CSR Class on March 22, 2019, adding a claim under Section 1402 for unpaid CSR payments for the 2019 benefit year.  *See* Pl.'s Second Am. Class Action Compl. ¶¶ 112–16, ECF No. 59.

The Court certified the 2019 CSR Class on May 29, 2020, again appointing Common Ground as the class representative and Quinn Emanuel as lead counsel for the class.  *See* Order, ECF No. 90.

After Common Ground filed its Second Amended Complaint, the Government appealed the Court's order granting Plaintiff's Motion for Summary Judgment and denying Defendant's Motion to Dismiss.  *See* Notice of Appeal, ECF No. 74.  In a separate but related appeal, *Community Health Choice, Inc. v. United States*, the United States Court of Appeals for the Federal Circuit found that the Government had an obligation to pay plaintiff-insurers the full CSR amounts owed each year under the statute reduced by "the amount of additional premium tax credit payments that each insurer received as a result of the government's termination of cost-sharing reduction payments" under a practice known as "silver loading."  970 F.3d 1364, 1367 (Fed. Cir. 2020).  Subsequently, the Federal Circuit affirmed in part, reversed in part, and remanded in part the Court's decision in this case consistent with their decision in *Community Health Choice*.  *See* Order, ECF No. 133.

Class Counsel filed a petition for a writ of certiorari to the United States Supreme Court on Common Ground's behalf, seeking review of the Federal Circuit's decision to the extent it allowed insurers' damages to be reduced.  *See* Pet. Writ Cert., *Common Ground Healthcare Cooperative v. United States* (U.S. Feb. 24, 2021) (No. 20-1200).  The Supreme Court denied the petition and also denied the Government's conditional cross-petition for a writ of certiorari.  *See* Orders List (U.S. June 21, 2021).

Following issuance of the Federal Circuit's mandate, the parties reported in July 2021 that they had begun settlement negotiations to resolve both the 2017-2018 and 2019 claims.  *See* Joint Status Report at 1, ECF No. 149.  As part of those discussions, Class Counsel's actuarial expert proposed a methodology to the Government for the purpose of settling the CSR claims, and the

3

parties engaged in substantial back-and-forth negotiations over the next two years. *See, e.g.*, ECF Nos. 157, 160, 162, 164–65, 167–68, 171, 175, 182, 199–201 (joint status reports describing the parties' efforts to resolve the CSR claims). They reached a tentative agreement on the methodology in September 2023. *See* Joint Status Report at 1, ECF No. 202. That agreement required gathering "relevant data from plaintiff-insurers from past benefit years in order to calculate whether damages may be owed to a given insurer for a given year." *Id.* Most, but not all, class members provided the necessary data to the Government and subsequently reached agreement on settlement amounts. *See* Joint Status Report at 3, ECF No. 250. The parties then filed a Joint Motion to Divide the two litigation classes (the 2017-2018 CSR Class and the 2019 CSR Class) into four subclasses: (1) the "2017 CSR Subclass," (2) the "2018 CSR Subclass," (3) the "2019 CSR Subclass," and (4) the "Not-Pursuing-Claims-Beyond-2017 Subclass." *See* Joint Mot. to Divide the 2017-2018 CSR & 2019 Classes into Subclasses at 2, ECF No. 256. On April 7, 2025, the Court granted the motion, allowing the 2017 CSR Subclass, 2018 CSR Subclass, and 2019 CSR Subclass (collectively, the "Settlement Classes") to move forward with the parties' proposed settlement expeditiously, while still enabling the Not-Pursuing-Claims-Beyond-2017 Subclass to resolve their claims if they provided the necessary paperwork. *See* Order, ECF No. 258.

The Court preliminarily approved the parties' settlement agreement on September 23, 2025. *See* Order, ECF No. 285. After giving notice to the Settlement Classes and the opportunity to object or opt out, the Court held a fairness hearing on November 6, 2025. Satisfied that the Settlement Agreement was fair, reasonable, and adequate under Rule 23(e) of the Rules of the United States Court of Federal Claims ("RCFC") and the fairness factors the Court has historically

considered, the Court granted Common Ground's motion for final approval of the settlement. *See* Order, ECF No. 294.

Class Counsel filed a Motion for Approval of Attorney's Fees on October 30, 2025, seeking a five-percent fee award. *See* Mot. for Approval of Att'y's Fees, ECF No. 290. The Court directed the members of the Settlement Classes to submit in writing to Class Counsel any objections or responses to the fee request and ordered Class Counsel to file a reply addressing all objections and responses. *See* ECF No. 294. Class Counsel filed such a reply on December 15, 2025, noting that one class member, Quartz, objected to the fee request and argued that a 2.5-percent fee award would be more appropriate in this case. *See* Class Counsel's Reply in Further Supp. of its Mot. for Approval of Att'y's Fees at 2, ECF No. 299.

## II.    LEGAL STANDARD

RCFC 23 permits the Court to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement" in a certified class action. RCFC 23(h). Attorney's fee awards are "committed to the sound discretion of the court." *Moore v. United States*, 63 Fed. Cl. 781, 786 (2005). In common fund cases, such as this one, where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf," *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980), "a litigant or a lawyer . . . is entitled to reasonable attorney fees from the fund as a whole," *Haggart v. Woodley*, 809 F.3d 1336, 1352 (Fed. Cir. 2016) (internal quotations and modifications omitted) (citing *Boeing*, 444 U.S. at 478). Awarding attorney's fees out of the common fund guarantees that each member of the class pays its fair share for class counsel's representation. *See Boeing*, 444 U.S. at 478 (explaining that common fund fee awards avoid unjustly enriching parties that substantially benefited from, but only minorly contributed to, the suit); *see also Kane Cnty.*, *Utah*

*v. United States*, 145 Fed. Cl. 15, 18 (2019) (describing "multi-factor test" used in "the assessment of the reasonableness of fee requests in common fund cases").

The Court may utilize differing approaches to determine the reasonableness of an attorney's fee request in common fund cases, including the percentage-of-the-fund and lodestar approaches. *Mercier v. United States*, 156 Fed. Cl. 580, 591 (2021) (citing *Haggart*, 809 F.3d at 1355). Under the percentage-of-the-fund approach, several judges of the Court of Federal Claims have utilized the factors laid out in *Moore* as a guidepost for determining the reasonableness of the percentage requested by counsel. *See, e.g.*, *Kane Cnty.*, 145 Fed. Cl. at 18; *Lambert v. United States*, 124 Fed. Cl. 675, 683 (2015); *Quimby v. United States*, 107 Fed. Cl. 126, 133 (2012). These factors are:

> (1) the quality of counsel; (2) the complexity and duration of the litigation; (3) the risk of nonrecovery; (4) the fee that likely would have been negotiated between private parties in similar cases; (5) any class members' objections to the settlement terms or fees requested by class counsel; (6) the percentage applied in other class actions; and (7) the size of the award.

*Moore*, 63 Fed. Cl. at 787 (citing Manual for Complex Litigation § 14.121 (4th ed. 2004)). No single factor is necessarily dispositive, and each can be weighed at the Court's discretion. *See, e.g.*, *Quimby*, 107 Fed. Cl. at 134 (considering each factor and determining that the award was most justified by the fourth factor—that the fee resembled the fee that likely would have been negotiated between the parties).

The lodestar method, on the other hand, is more often used in fee-shifting cases to determine the reasonableness of an attorney's fee request. But it is also sometimes used in common fund cases as a cross-check of, or comparison to, the percentage-of-the-fund calculation arrived at through the *Moore* factor analysis. *See, e.g.*, *Elec. Welfare Tr. Fund v. United States*, 171 Fed. Cl. 362, 387 (2024); *Perez v. Rash Curtis & Assoc.*, No. 4:16-cv-03396, 2020 WL

1904533, at *18 (N.D. Cal. Apr. 17, 2020).  Used in that way, a lodestar cross-check acts as a secondary reasonableness review and guards against windfall attorney's fees.  *See* 5 William B. Rubenstein et al., *Newberg and Rubenstein on Class Actions* § 15.85 (6th ed. 2022); *In re Cendant Corp. Litig.*, 264 F.3d 201, 285 (3d Cir. 2001).

Whether on its own or as a cross-check, the lodestar method utilizes a base calculation that multiplies the number of hours reasonably billed by class counsel during the litigation by the reasonable billable rates for their services; the product is known as "the lodestar."  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 553, 564 (1986) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see Sci. Applications Int'l Corp. v. United States*, No. 17-cv-00825C, 2021 WL 3557427, at *2 (Fed. Cl. July 26, 2021).  At the first step of the cross-check, a court must determine whether counsel's billed hours and rates are reasonable.  *See Hensley*, 461 U.S. at 433; *Perez*, 2020 WL 1904533, at *19.  The court may reduce the hours and/or rates if they are found unreasonable because, for example, counsel's documentation is insufficient or counsel's rates are inflated.  *Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").  This "provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Del. Valley Citizens' Council*, 478 U.S. at 564 (quoting *Hensley*, 461 U.S. at 433).  In a common fund case, the court may increase or decrease the amount of the lodestar by a so-called "risk multiplier," which is a number symbolizing the amount of risk or difficulty involved with the case.  *Haggart*, 809 F.3d at 1355 & n.19.

Next, the fee requested is divided by the lodestar to determine an implicit multiplier.  *See Health Republic Ins. Co. v. United States*, 58 F.4th 1365, 1372 (Fed. Cir. 2023); *Haggart*, 809 F.3d at 1355 n.19.  Although "the resulting multiplier need not fall within any pre-defined range,"

*Health Republic*, 58 F.4th at 1375 (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 & n.17 (3d Cir. 2005)), the Federal Circuit has recognized a "norm of implicit multipliers in the range of 1 to 4," *id.* If the multiplier is above this norm or is otherwise "too great" in relation to the facts of the particular case, "the court should reconsider its calculation under the percentage-of-recovery method, with an eye toward reducing the award." *In re Rite Aid*, 396 F.3d at 306. This last step of the lodestar cross-check allows the court to "make its own determination of what fee to award, within the range of reasonable possibilities . . . ." *Health Republic*, 58 F.4th at 1377. Regardless of whether the court decides to reduce, retain, or increase the multiplier, the court should justify the final award amount. *In re Rite Aid*, 396 F.3d at 306; *Health Republic*, 58 F.4th at 1375 (explaining that the court "must provide sufficient analysis" and consider multipliers from comparable cases to justify the award).

## III.    DISCUSSION

Having considered the fee petition and objection, and based on its familiarity with the case, the Court approves Class Counsel's fee request. The benefits that Class Counsel generated for the Settlement Classes justify a five-percent fee award based on the seven *Moore* factors, and a lodestar cross-check confirms that a five-percent fee award is reasonable. Further, the sole objection to this award does not persuade the Court that a five-percent fee award is unreasonable in this instance.

### A.    The *Moore* Factors Support a Five-Percent Fee Request.

Class Counsel focuses on the second, third, sixth, and seventh *Moore* factors in their fee request. ECF No. 290 at 13–21. While the Court agrees that those four factors weigh particularly strongly in favor of approving Class Counsel's fee request, the Court finds that overall six of the seven *Moore* factors counsel in favor of approving a five-percent fee award, while one factor is neutral.

1.      The Quality of Counsel

There is little question about the quality of Class Counsel's representation in this case. This case presented numerous challenges, including litigation in multiple courts and an extensive settlement process. For the unreimbursed CSR payments for the 2017 benefit year and first two financial quarters of the 2018 benefit year, Class Counsel moved for and won on summary judgment, securing a judgment of over $1.5 billion for the 2017-2018 CSR Class. *See* ECF Nos. 36, 48, and 72. Class Counsel was then mostly successful defending that judgment on appeal, *see* ECF No. 133, sought review by the Supreme Court (albeit unsuccessfully), and finally proceeded toward settlement of the CSR claims. *See* ECF No. 149. As Class Counsel notes, the Federal Circuit's decision in *Community Health Choice* allowed Class Counsel to negotiate a favorable settlement methodology with the Government because it permitted the Government to net out proceeds derived from "silver loading" in the post-2017 benefit years. *See* ECF No. 290 at 14. Class Counsel's approach allowed Settlement Class members to choose between different methodologies, and their efforts resulted in a $505,225,613.16 settlement (a near-100% recovery) for the members of the Settlement Classes. *See id.* at 15. Thus, the quality of counsel factor weighs strongly in favor of Class Counsel.

2.      The Complexity and Duration of the Litigation

This case, like most class actions, was highly complex. *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) ("Most class actions are inherently complex.") (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y. 1998)). The litigation has also been lengthy—it has now been almost nine years since Common Ground filed its initial complaint. *See* ECF No. 1. The settlement process alone took four years to complete. *Compare* Joint Status Report, ECF No. 149 (describing the parties' intentions as of

9

July 30, 2021, to negotiate next steps after the Supreme Court denied petitions for certiorari) *with* Joint Status Report, ECF No. 274 (stating that, as of July 11, 2025, the parties reached an agreement in principle after receiving CSR-verified amounts from CSR class members).

As the Court previously noted, the legal questions in this case were especially complex due to the nature of the ACA.  *See Health Republic Ins. Co. v. United States*, 173 Fed. Cl. 508, 524 (2024), *amended*, 176 Fed. Cl. 746 (2025) (noting that "although the present cases did not involve lengthy pre-trial procedures or trial, the legal questions were based on a 'notoriously complex statute,' the ACA" (quoting *Minuteman Health, Inc. v. United States Dep't of Health & Hum. Servs.*, 291 F. Supp. 3d 174, 179 (D. Mass. 2018))).  And, as the Court also previously acknowledged, the management of a class of approximately 130 members was a complex logistical exercise.  *See Health Republic Ins. Co. v. United States*, 156 Fed. Cl. 67, 78 (2021), *vacated and remanded*, 58 F.4th 1365 (Fed. Cir. 2023) (describing, *inter alia*, Class Counsel's tasks of traveling to meet with numerous QHP issuers and helping class members facing insolvency).  These logistical hurdles heightened the complexity of the case.  *See In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 94 (D.D.C. 2013) (acknowledging the "unenviable logistical challenges that confronted class counsel" in a large class action and finding it highly complex even considering the lack of discovery, merits briefing, or trial).  This factor thus favors Class Counsel.

### 3.    The Risk of Nonrecovery

There was a substantial risk that Class Counsel would not be paid for their work on this case.  As the Court previously noted, Class Counsel pioneered a novel legal theory for the risk corridors claims, which ultimately won at the Supreme Court.  *See Health Republic*, 173 Fed. Cl. at 525.  There was a serious risk that such theory would not succeed.  *Id.* at 525–26.  Because the CSR claims were built upon that novel legal theory, *see* ECF No. 290 at 17–18, the risk of

nonpayment in the risk corridors work carried over to the CSR claims portion of the case. While it may have been more likely that the CSR claims would succeed after the risk corridors theory was successful, "[i]t is well-established that litigation risk must be measured as of when the case is filed." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) (internal quotation marks omitted). Here, Class Counsel filed the case prior to the success of their risk corridors theory, and thus, the litigation risk was high. Additionally, with regard to the CSR claims, Class Counsel faced the risk on appeal that the Federal Circuit would extend the Government's netting beyond just "silver loading," which may have reduced the class members' recovery. *See* ECF No. 290 at 18. Thus, while "all litigation carries risk," *Raulerson v. United States*, 108 Fed. Cl. 675, 678 (2013), it is clear that this case was particularly risky. Accordingly, the risk of non-recovery factor weighs in favor of Class Counsel's fee request.

    4.    <u>The Fee That Likely Would Have Been Negotiated Between Private Parties in Similar Cases</u>

Market evidence of fee awards that have been negotiated in similar cases can support the reasonableness of a fee award. *Quimby*, 107 Fed. Cl. at 134 (approving a fee award largely because it was similar to what would have been negotiated in similar cases). Here, Class Counsel advises that both Health Republic (the plaintiff in a companion ACA class action involving a risk corridors claim) and Common Ground agreed to a 25-percent attorney's fee with Class Counsel before the certification of their respective classes. *See* ECF No. 290 at 17 (citing Decl. of Stephen A. Swedlow ¶ 8, *Health Republic* ECF No. 84-1). This, Class Counsel asserts, is evidence that a much higher fee than five percent would have been negotiated by private parties in a similar case. *See id.* Class Counsel also represents that "not a single other contingency lawyer handling CSR claims was willing to go as low as 5% for its fees." *Id.* (citing ECF No. 84-1 ¶¶ 12–16 (stating that other firms' fee percentages were much higher than Class Counsel's five-percent fee).

11

The Court agrees that the 25-percent fee arrangement to which Health Republic and Common Ground both agreed prior to class certification, and the higher rates sought by other firms representing QHP issuers in related litigation, support the conclusion that the fee that likely would have been negotiated here would have exceeded the five-percent fee Class Counsel is requesting. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 719 (7th Cir. 2001) (describing an important market "benchmark" of "actual agreements" and emphasizing that "similar bargains" can be a useful "starting point" for comparisons). Thus, the fourth factor suggests that five percent is reasonable.

5.        The Percentage Applied in Other Class Actions

The fifth *Moore* factor directs the Court to make a comparison of the fee percentages awarded in similar cases. Broadly speaking, courts have found that "a majority of common fund class action fee awards fall between twenty and thirty percent." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993). "[E]ven in megafund cases involving recoveries of $100 million or more, fees of fifteen percent are common." *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d at 98 (internal quotation marks omitted). Empirical studies suggest the same range of fee percentages awarded. *See* Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 27, 73 (2004) ("for cases with recovery ranges that exceeded $190 million (the highest decile), the mean fee awarded was 12% and median fee was 10.1% in cases for which published-opinion data was available"); Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 839 (2010) (finding that for class action settlements of $500 million to $1 billion, the mean and median awards were both 12.9%).

However, with respect to the risk corridors litigation in both *Health Republic* and the instant case, which also resulted in megafund judgments, the Court ultimately reduced by half Class Counsel's request for a five-percent fee, awarding 2.5 percent instead. *Health Republic*, 173

Fed. Cl. at 521–22. That reduction occurred due to the relatively low number of hours worked on those claims in comparison to the huge amount of the recovery and because the resulting decrease in the lodestar was reasonable based on a cross-check. *Id.* Thus, a five-percent fee is low compared to the fee percentage awarded generally in class actions. *See, e.g.*, *Raulerson*, 108 Fed. Cl. at 680 (approving a 33 percent fee on a $22 million settlement); *Quimby*, 107 Fed. Cl. at 134 (approving a 30 percent fee award on a $74 million common fund). But it is higher than the percentage awarded for work on other ACA claims in both this case and a related case (*Health Republic*) filed in this Court. As a net result, the fifth factor neither favors nor disfavors Class Counsel.

      6.      The Size of the Award

The sixth *Moore* factor counsels that the Court should consider the amount of the requested fee award relative to the overall compensation to the class. *See Moore*, 63 Fed. Cl. at 789. The requested five-percent fee amounts to an award of over $25 million to Class Counsel, but in the context of the over $505 million settlement for the Class, it is reasonable. *See Raulerson*, 108 Fed. Cl. at 680 (noting that "the size of the award . . . is large, but so is the class members' total recovery"). Furthermore, the size of the award here is relatively low compared to the size of awards in other similar megafund cases. *See Mercier*, 156 Fed. Cl. at 591–93 (awarding class counsel a $32 million fee out of the $160 settlement they obtained from the government); *see also* Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 948 (2017) (noting that in a study of common fund cases reported from 2009 to 2013 with recoveries greater than $100 million, the yearly average fee award ranged from $37.9 million to $124 million). Thus, the Court finds this factor favors Class Counsel's request.

      7.      The Sole Objection to the Fee Request

The seventh, and final, *Moore* factor considers any objections to the fee request. While the presence of objections is an important consideration, the absence or minimal number of objections

13

does not automatically signify that a fee request is reasonable.  *See* RCFC 23(h)(3); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (vacating an attorney's fee award where the district court "abdicated its responsibility to assess the reasonableness of attorney's fees" in an unopposed class action settlement).  As another judge on this Court has noted:

> [T]he Court's fiduciary role is especially important in the context of fixing reasonable attorneys' fees "because the adversary system is typically diluted—indeed, suspended—during fee proceedings," as "[d]efendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee."

*Mercier*, 156 Fed. Cl. at 593 (quoting *Goldberger*, 209 F.3d at 52).  At the same time, "the lodging of an objection(s) in itself [does not] show[] that the fee sought is unreasonable."  *Health Republic*, 173 Fed. Cl. at 522.

One class member, Quartz, objects to Class Counsel's requested fee award.  *See* ECF No. 299 at 2.  Quartz's main concern appears to be that Class Counsel's fee request exceeds the fee that would be negotiated in a competitive market.  *See* Class Counsel's Reply in Further Supp. of its Mot. for Approval of Att'y's Fees, Ex. A at 2, ECF No. 299-1 ("We believe a competitive legal market would accept a 2.5% fee.").  As support for this contention, Quartz claims that Class Counsel's request for a five-percent fee award "is above average when compared to similar cases" such as the risk corridors portion of this case, and that a five-percent fee award would constitute "an unjustified windfall" to Class Counsel.  *Id.*  Quartz also states that the lodestar multipliers in the fee petition "are extremely high" and that "a more reasonable multiplier cap is 2."  *Id.*

First, to address Quartz's point regarding the lodestar multipliers, the Court notes that Quartz appears to have mixed up the fee petitions in this case.  Quartz's initial objection references lodestar multipliers of 11.5 and 16.25, but these figures are from the renewed fee petition that Class Counsel filed in relation to the risk corridors claim, not the present motion.  *Compare* Class Counsel's Mot. for Approval of Att'y's Fee Request at 13–14, ECF No. 185 (citing multipliers of

14

16.25 and 11.5) *with* ECF No. 290 at 27 (citing a 3.58 multiplier for the fee petition at hand). Class Counsel pointed out this error to Quartz and gave Quartz an opportunity to change its objection in light of the lodestar multiplier in the present motion. *See* ECF No. 299-1 at 1. In response, Quartz stated that its "objection remains," citing its argument that a multiplier cap of two is "more reasonable." *Id.*

Quartz offers no principled basis for imposing a multiplier cap of two. Quartz does not cite, nor is the Court aware of, any case instructing that a fee award is reasonable only if the implicit multiplier is two or lower. Indeed, the Federal Circuit has recognized a "norm of implicit multipliers in the range of 1 to 4" and has also emphasized that the multiplier "need not fall within any pre-defined range." *Health Republic*, 58 F.4th at 1375 (quoting *In re Rite Aid*, 396 F.3d at 307 & n.17). Here, the implicit multiplier of 3.58 is within the range of one to four. Given the absence of any factual or legal analysis from Quartz, the Court does not find the objection to Class Counsel's 3.58 implicit multiplier to be of value in making a determination about the reasonableness of this fee request.

As Class Counsel points out, the lodestar approach "approximate[s] the reasonable fee that a competitive market would bear." ECF No. 290 at 22 (quoting *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010)). As the Court explains in the following section, a lodestar cross-check confirms that Class Counsel's rates are not unreasonable. *See infra* § III.B. Although a 2.5-percent award here would correspond to an implied multiplier of 1.79, which is within the normal range of one to four, that does not make a five-percent award and its corresponding 3.58 implied multiplier unreasonable, as it too falls within the normal range. Thus, contrary to Quartz's assertion that a five-percent award would represent an "unjustified windfall" for Class Counsel, ECF No. 299-1 at 2, the lodestar cross-check confirms that it does not. Quartz has failed to provide

specific reasons why a five-percent fee award would be unfair or unreasonable, aside from the fact that the fee award will reduce the funds available for payment to the Settlement Classes, which is a necessary and unavoidable result of any common fund fee award.

Second, Quartz's argument that the requested percentage of five percent is "above average," and thus too high, is similarly unpersuasive. *Id.* Quartz cites no statistics or data on what it believes the average percentage is; it simply states that five percent is above it. Quartz further states that it "believe[s] a competitive legal market would accept a 2.5% fee" but it offers no factual support for that contention. *Id.* As discussed above, the most persuasive evidence of the market rate is what Health Republic and Common Ground agreed to pay Class Counsel for legal representation in these ACA cases, and that figure was 25 percent. *See supra* § III.A.4. And while the Court acknowledges that it ultimately approved a 2.5-percent fee award in those cases for work performed on the risk corridors litigation, the fee amount was reduced as a result of the imbalance between the hours billed compared to the amount recovered, which had resulted in a very high implicit lodestar multiplier. *See Health Republic*, 173 Fed. Cl. at 521–26 (finding that an award of 2.5 percent, which corresponded to a lower lodestar multiplier of 9.56, was reasonable and justified). Notably, the lodestar requested in relation to risk corridors claims was significantly higher than the lodestar requested in the instant motion in relation to CSR claims. In any event, the Court has factored into its analysis the difference between the 2.5-percent fee previously approved and the five percent requested here in concluding that the fifth *Moore* factor is neutral. *See supra* § III.A.5.

Accordingly, Quartz's objection does not provide the Court good reason to deny the requested five-percent fee award, which five other *Moore* factors and the lodestar cross-check strongly indicate is fair and reasonable. This factor thus weighs in favor of Class Counsel.

16

**B.     A Lodestar Cross-Check Confirms that a Five-Percent Fee Award Is Reasonable.**

As noted above, lodestar cross-checks are sometimes used in common fund cases to verify the reasonableness of the percentage-of-the-fund approach guided by the *Moore* factors. *See, e.g.*, *Elec. Welfare*, 171 Fed. Cl. at 387. Because the class notices sent to potential class members in this case "expressly guaranteed use of a lodestar cross-check . . . in determining an attorney's fee award," *Health Republic*, 58 F.4th at 1373, the Court will perform a cross-check as a double check. Here, a lodestar cross-check confirms that a five-percent fee award is reasonable.

1.     Class Counsel's Documentation of Its Hours Is Sufficient.

In considering whether Class Counsel's billed hours and rates are reasonable, the Court first evaluates whether Class Counsel's hours are sufficiently documented. *See Hensley*, 461 U.S. at 433. This determination requires "neither mathematical precision nor bean-counting"—the Court may rely on a summary of the hours expended by the attorneys who worked on the case. *In re Rite Aid*, 396 F.3d at 306.

Class Counsel includes three categories of hours in its fee request: (1) 10 percent of the pre-July 2020 hours the Court previously found were properly attributed to CSR claims, Decl. of Adam B. Wolfson ¶ 7, ECF No. 290-1; (2) all of the post-July 2020 hours that Class Counsel billed that were solely related to CSR work, *id.* ¶ 8; and (3) 30 percent of the post-July 2020 hours that Class Counsel billed to both CSR and risk corridors work, *id*. In total, these categories add up to 3,378 billable hours of work. As for the first category, in its opinion awarding attorney's fees to Class Counsel for its risk corridors work through July 30, 2020, the Court found that Class Counsel had improperly included certain hours in its fee request. *See Health Republic*, 173 Fed. Cl. at 518–19. Class Counsel conceded that the Court could reduce the hours submitted in support of its risk corridors fee request to ensure that it was not double-counting hours for both claims. *See* Oral Arg. Tr. at 15:11–17:6, ECF No. 221. The Court accordingly reduced Class Counsel's hours by

17

10 percent for the improperly included CSR hours, reasoning that "hours spent working on the CSR claims must be excluded because they are stand-alone claims for which Class Counsel will eventually seek a separate fee award to the extent it obtains a judgment or settlement in the classes' favor." *Health Republic*, 173 Fed. Cl. at 518. Now that such a settlement has been obtained, it is appropriate for Class Counsel to seek fees for 10 percent of the pre-July 2020 hours.

As for the second and third categories of CSR hours for which Class Counsel seeks fees, the Court finds that Class Counsel properly included and documented its hours. Seeking fees for solely CSR-related work in the post-July 2020 period is clearly reasonable in this request for CSR-related attorney's fees. And attributing only 30 percent of the hours billed post-July 2020 for both CSR and risk corridors work to CSR-related work is reasonable, and if anything underestimates the CSR-related hours for this category. In fact, Class Counsel represents that "[w]here Class Counsel attorneys billed both CSR and risk corridors work in the same time entry, Class Counsel attributed only 30% of those entries to CSR work, even though its review indicated that CSR work typically represented much more than 30% of the time billed." ECF No. 290-1 ¶ 8; *see* ECF No. 290 at 27.

Class Counsel also attached to its motion two spreadsheets listing the total hours and rates billed by every attorney and paralegal for each year of the CSR litigation. *See* Decl. of Adam B. Wolfson, Ex. A, ECF No. 290-2. Class Counsel summarized the work of the key team members and that of the overall team. *See* ECF No. 290-1 ¶ 5. This summary includes a description of the contributions of the three highest billers on the case, Mr. Horton, Mr. Swedlow, and Mr. Wolfson, all of whom worked on the case from its inception. *Id.* Mr. Horton first identified the potential claims for this case and worked on every aspect of the case, including both risk corridors and CSR issues. *Id.* Mr. Swedlow communicated and coordinated with class members and assisted in every

aspect of the case until leaving the firm for public service in 2022. *Id.* The tabulation of Mr. Swedlow's hours reflects this departure from the firm, as he did not bill any time on the case from 2023 onwards. *See* ECF No. 290-2. Finally, Mr. Wolfson's work on the case included developing the complaint, identifying Common Ground as a potential class representative, and leading briefing. ECF No. 290-1 ¶ 5. After Mr. Swedlow left, Mr. Wolfson spearheaded the case overall and negotiated the CSR settlement. *Id.* Class Counsel also details the work of other partners on the case, such as Mr. Cooper, who pursued the appeals for the CSR claims, and Mr. Schapiro, who also worked on appellate issues and later helped to lead the case overall. *Id.* Finally, Class Counsel details the work of several associates who gathered facts, conducted research, communicated with class members, and interacted with other plaintiffs and their counsel. *Id.* The Court is thus satisfied with the level of documentation provided by Class Counsel.

       2.      <u>Class Counsel's Hourly Rates Are Reasonable.</u>

The Court next considers Class Counsel's hourly rates. Quinn Emanuel represents that it sets hourly rates for its partners and associates who practice out of its Washington, D.C. office in accordance with the competitive market rates in Washington, D.C. *See* Decl. of William A. Burck ¶ 3, ECF No. 290-3. These rates reflect the number of years each attorney has been in practice, with some flexibility based on a particular attorney's expertise or specialized practice. *Id.* ¶ 4. While Class Counsel offered to submit a copy of Quinn Emanuel's hourly rate sheets *in camera* for the Court's review, the Court has no reason to doubt the veracity of Class Counsel's representation that its hourly rates are competitive and thus does not need to review them *in camera*. *Id.* ¶ 3 (explaining that because "[t]he vast majority of Quinn Emanuel's work is not on contingency, [] setting these hourly rates in a way that is competitive in the D.C. market is incredibly important to our business there"). Class Counsel also confirms that the hourly rates

listed in the lodestar calculations that it submitted match the rates that Quinn Emanuel charged non-contingency clients in the same timeframes. *Id.* ¶ 5.

In the spreadsheets listing hours and rates billed by attorneys and paralegals during the CSR claims litigation, Class Counsel uses the 2025 billing rate for both the pre-July 2020 and post-July-2020 lodestar. *See* ECF No. 290-2. Although the publicly filed spreadsheets are redacted, the Court has reviewed the billing rates provided in the unredacted spreadsheets filed under seal. *See* ECF No. 291. As the Court explained in its previous opinion, counsel may use billing rates in effect as of the date of an attorney's fee motion to account for delay in payment. *See Health Republic*, 173 Fed. Cl. at 518 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994)). Given that this fee request was filed in 2025, the Court finds it appropriate to apply Class Counsel's 2025 rates. Because Class Counsel's documentation of its hours is sufficient, and because their hourly rates are reasonable, the Court finds that Class Counsel's billed hours and rates used to calculate its lodestar are reasonable.

### 3. The Implicit Lodestar Multiplier of 3.58 Confirms the Five-Percent Fee Award Is Reasonable.

The lodestar cross-check is "an aid to the court's assessment of the reasonableness of the [requested] fee." *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002). Here, the cross-check confirms what the *Moore* factors already suggest: that a five-percent fee award is reasonable. Applying Class Counsel's 2025 rates to its total hours billed yields a lodestar of $1,999,767.01 for the pre-July 2020 period, and a lodestar of $5,064,879.03 for the post-July 2020 period—resulting in a combined total lodestar of $7,064,646.04. *See* ECF No. 290-2 at 6. Thus, the implicit multiplier— which is the total requested fee ($25,261,280.66, or five percent of the total settlement value) divided by the lodestar—is 3.58. *See id.* This implicit multiplier is within the range of one to four

that the Federal Circuit considers the "norm of implicit multipliers." *Health Republic*, 58 F.4th at 1375.

Comparable cases confirm that this multiplier is reasonable.  For instance, in *Electrical Welfare*, which similarly involved a claim by health insurers against the Government related to the ACA, the court approved a 25-percent award from an approximately $169 million settlement, which correlated with a 6.63 multiplier.  171 Fed. Cl. at 390.  There, the court reasoned that the duration of the case, the successful work class counsel performed (including obtaining summary judgment and a favorable settlement), and the lack of objections to the fee request supported approving the fee award.  *Id.* at 371–73, 384, 389.  Here, similarly, the litigation was streamlined.  After the Circuit resolved the appeal of the summary judgment decision, Class Counsel successfully negotiated settlement.  Although there is one objection to the requested fee (whereas there were no objections in *Electrical Welfare*), the Court finds that objection lacks merit.  The duration of the litigation is also similar—"almost a decade" in *Electrical Welfare*, *id.* at 384, compared to about eight years in this case.

Comparison to *Kurzweil v. Philip Morris Co.*, 1999 WL 1076105 (S.D.N.Y. Nov. 30, 1999), is also instructive.  There, the district court found an award of 30 percent of $124 million, corresponding with a multiplier of 2.46, to be reasonable.  *Id.* at *1.  Like the case at hand, in the *Kurzweil* case, "[t]he risk factor . . . was high."  *Id.*  That was because, like here, the case "combine[d] two class actions, involved highly complex and difficult issues, and required time-consuming work to extract and present the proof that generated a settlement favorable to the classes of plaintiffs."  *Id.*  The district court emphasized that before the settlement, "[t]here had been no large settlements in tobacco litigation generally."  *Id.*  Similarly here, Class Counsel set forth a novel legal theory, risking nonrecovery, and ultimately negotiated a first-of-its-kind CSR

methodology used to negotiate a substantial settlement for the class. Although Class Counsel's

requested fee award results in a multiplier of 3.58, which is slightly higher than the 2.46 multiplier

in *Kurzweil*, and although the subject matter of the two cases is different, the *Kurzweil* court noted

that multipliers "between 3 and 4.5 have been common," at least in federal securities cases. *Id.*

This range overlaps with the one to four range approved by the Federal Circuit. *See Health

Republic*, 58 F.4th at 1375; *see also Mercier*, 156 Fed. Cl. at 592 (approving a 20-percent fee

award based on a $160 million settlement, which corresponded to a lodestar of 2.95, but declining

class counsel's invitation to approve an award of 30 percent, representing a multiplier of 4.4).[1]

As Class Counsel notes, courts have also approved fee awards in similar cases with much

higher multipliers. Most notably, the Court awarded a 2.5-percent fee award, corresponding to a

9.56 multiplier, relating to the risk corridors litigation in this case and *Health Republic*. 173 Fed.

Cl. at 521–26. In *Conley v. Sears, Roebuck & Co.*, the district court found a 4.5-percent fee award

from a $165 million settlement fund, which corresponded to a multiplier of 8.9, to be reasonable.

222 B.R. 181, 182 (D. Mass. 1998). Like this case, the litigation in *Conley* was relatively

streamlined and there was no trial. While the court mentioned the 8.9 multiplier, its analysis was

mostly based on other factors that supported the fee's reasonableness: that the fee agreement was

negotiated after settlement was approved, the lack of objections, that the attorneys' fees would not

come out of the common fund, and the value added by class counsel. *Id.* at 188. While not all of

those features are present here, the sole objection to this fee request and the value added by Class

Counsel make the cases similar, and the multiplier here is much lower than the 8.9 multiplier in

*Conley.* In *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, the district

---

[1] Like here, there was a single, unpersuasive objection to the fee award in *Mercier*. *See* 156 Fed. Cl. at 592.

court considered an $84 million fee award request (24 percent of approximately $350 million), which represented a 10.05 multiplier.  2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009).  The court instead awarded $70 million, which represented a multiplier of 8.3, relying on both *Conley* and *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n. 44 (E.D. Pa. 2001),[2] as comparators.  *Id.*  The *New England* court cited *In re Rite Aid* as standing for the proposition that "under the cross-check approach, a lodestar multiplier in the range of 4.5 to 8.5 was unquestionably reasonable."[3]  *Id.* (internal quotation marks omitted).  It ultimately found an 8.3 multiplier to be reasonable because, like here, class counsel performed high quality work in a "complex, hard-fought litigation" resulting in a megafund settlement with near-unanimous consent from the class members.  *Id.* at *2.

Accordingly, cases with similar circumstances have found reasonable multipliers in the range of 2.46 to 9.56.  "Consideration of multipliers used in comparable cases" justifies the award approved here.  *In re Rite Aid*, 396 F.3d at 307 & n.17.  Having "examined the reasoning behind . . . awards in cases of similar size," *In re Cendant*, 243 F.3d at 737, the Court finds that the implicit multiplier of 3.58 here is reasonable.

---

[2] In this 2001 decision, which was not appealed, the court approved a partial class action settlement with the corporation's shareholders.  *In re Rite Aid*, 146 F. Supp. 2d at 711.  The *In re Rite Aid* opinion issued by the Third Circuit, which the Court cites above, involved an appeal from a different settlement approval decision in the same case, *In re Rite Aid Corp. Sec. Litig.*, 269 F. Supp. 2d 603 (E.D. Pa. 2003), *vacated and remanded*, 396 F.3d 294 (3d Cir. 2005).  The 2003 decision approved a partial class action settlement with the auditor, former chief executive officer, and former chief operating officer of the corporation—all of whom had been initially excluded from the 2001 settlement.  *In re Rite Aid*, 269 F. Supp. 2d at 612.

[3] While *In re Rite Aid* declined to conduct a lodestar cross-check and instead relied on the percentage-of-the-fund approach to approve a 25-percent fee award from a $193 million common fund, the court noted that if it had conducted a lodestar cross-check, the multiplier would have been in the reasonable range of 4.5 to 8.5.  146 F. Supp. 2d. at 736 n.44.

## IV. CONCLUSION

For all these reasons, the Court finds Class Counsel's request for a five-percent fee award reasonable and **GRANTS** its Motion for Approval of Attorney's Fees (CSR Claims Settlement) (ECF No. 290).  Having determined pursuant to RCFC 54(b) that there is no just reason for delay, the Court **DIRECTS** the Clerk to enter judgment in the amount of $25,261,280.66 to be paid to Class Counsel.

       **SO ORDERED**.


Dated: May 19, 2026                           */s/ Kathryn C. Davis*
                                      KATHRYN C. DAVIS
                                      Judge